UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CHARLES GUNDERSEN, TRACEY GUNDERSEN, and PROHOME TWIN CITIES,

Plaintiffs,

v.

PROHOME, INC., JACK H. SALMANS, SUSAN E. SALMANS, and LARRY W. JOHNSON,

Defendants.

CIVIL NO. 01-1307 (DSD/JMM)

REPORT AND RECOMMENDATION

The above matter came on for hearing before the undersigned on November 13, 2001 upon Defendants' Motion to Dismiss and/or Stay and to Compel Arbitration [Docket No. 5]. Marc Grant Kurzman, Esq. and Robert Charles Moilanen, Esq. appeared on behalf of Plaintiffs; Jay William Schlosser, Esq. appeared on behalf of Defendants. The matter was referred to the undersigned by Judge David S. Doty for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

**FINDINGS OF FACT/REPORT**

This case concerns a dispute over franchise rights purchased by Plaintiff ProHome Twin Cities, Inc. ("ProHome-TC") from Defendant ProHome, Inc. ("ProHome") through a Franchise Agreement. The Complaint alleges claims for fraudulent inducement, breach of contract, conspiracy, and violation of state and federal racketeering laws. Defendants have moved to dismiss or stay the case, arguing that all of the claims brought are subject to compulsory arbitration.

JAN 18 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## Factual Background

Only two of the parties to this lawsuit are also parties to the Franchise Agreement: Plaintiff ProHome-TC and Defendant ProHome. The Franchise Agreement contains an Arbitration Provision at section 19.07, which provides that:

> any controversy or claim arising out of or relating to this Agreement or its breach, including without limitation, any claim that this Agreement or any of its parts is invalid, illegal or otherwise voidable or void, shall be submitted to arbitration before and in accordance with the arbitration rules of the American Arbitration Association. . . . The provisions of this Section 19.07 shall be construed as independent of any other covenant or provisions of this Agreement; . . .

Plaintiffs Tracey Gundersen and Charles Gundersen were not parties to the Franchise Agreement, but they did sign a Guaranty and Assumption of Obligation, agreeing to be "personally bound by, and personally liable for the breach of, each and every provision in the Agreement, both monetary obligations and obligations to take or refrain from taking specific actions or to engage or refrain from engaging in specific activities, including without limitation [the non-competition covenant]."

## Discussion

Defendants move for an Order dismissing or staying the claims against Defendant ProHome and compelling Plaintiffs to bring those claims in arbitration. Defendants also seek an Order staying the claims against the individual Defendants until the claims against Defendant ProHome have been arbitrated.

### I. ENFORCEABILITY OF THE ARBITRATION AGREEMENT.

The Arbitration Provision (§ 19.07) applies, by its terms, to all claims arising out of or relating to the Franchise Agreement. Plaintiffs' primary argument in opposition

to the application of the Arbitration Provision to their claims is that the Court should conclude that a claim of fraud in the inducement of a contract containing an arbitration clause must be decided by a court, rather than by an arbitrator. See Sun Drilling Prods. Corp. v. Rayborn, 703 So.2d 818 (La. App. 1997).

While there is much to be said for Plaintiffs' argument, we may not consider it, because we are bound by precedent in the Court of Appeals for the Eighth Circuit. That court has held that, in deciding whether to compel arbitration, "the court may consider whether there was fraud in the inducement of the arbitration clause but it may not consider a defense of fraud in the inducement of the underlying contract. The latter issue goes to the merits of the dispute and is for the arbitrator." St. Paul Fire and Marine Insur. Co. v. Courtney Enterprises, Inc., 270 F.3d 621, 624-25 (8th Cir. 2001)(citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402-04 (1967))(emphasis added). Plaintiffs do not allege fraud in the inducement of the Arbitration Provision, but they do allege fraud in the inducement of the Franchise Agreement. Under St. Paul Fire, Plaintiffs' allegations about the contract as a whole do not provide a justification for the Court to refuse to enforce the arbitration agreement between the parties.

Plaintiffs also suggest that the Court should not enforce the Arbitration Provision in the Franchise Agreement because of another provision in the agreement (§ 19.06) which provides that the Agreement shall be governed by the laws of the State of Kansas. Plaintiffs argue that they cannot be compelled to arbitrate their claim for fraudulent inducement because Kansas law provides that agreements to arbitrate are not enforceable with respect to tort claims. See Kan. Stat. Ann. § 5-401(c)(3).

This argument overlooks the language of the Arbitration Provision in the Franchise Agreement. Section 19.07 of the Agreement states:

> Notwithstanding any provision of this Agreement relating to which state laws this Agreement shall be governed by and construed under, all issues relating to arbitrability or the enforcement of the Agreement to arbitrate contained herein shall be governed by the Federal Arbitration Act (9 U.S.C. 1, et seq.) and the federal common law of arbitration.

This language makes clear the intent of the parties to have federal law govern issues related to arbitration.[1] The existence of the general Kansas choice of law provision in the Franchise Agreement is insufficient to create an inference that Kansas' law of arbitration should apply.

We conclude that the agreement to arbitrate is valid and enforceable as to the subject matter of the Complaint. In the next section, we report on the question of which parties are bound by the agreement. In the final section we make a recommendation concerning the consequence of our findings.

## II. PARTIES BOUND BY THE ARBITRATION PROVISION.

"When a party moves to compel arbitration, our role is to determine whether there is an agreement between those parties which commits the subject matter of the dispute to arbitration." ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors, Inc., 133 F.3d 664, 668 (8th Cir. 1998)(citation omitted). The Arbitration Provision is valid and

---

[1] Even if this were not the case, the Eighth Circuit has "rejected the notion that a general choice-of-law provision, standing alone, is sufficient to lead to the inference that the parties intended for a state arbitration statute to apply, preempting the otherwise applicable federal statute." UHC Management Co. v. Computer Sciences Corp., 148 F.3d 992, 996 (8th Cir. 1998).

enforceable against Plaintiff ProHome-TC and Defendant ProHome, because they are signatories to the Franchise Agreement.

The Arbitration Provision is not enforceable against the individual Defendants, because they are not parties to any written agreements with Plaintiffs, and there is no other basis upon which to conclude that there is an agreement to arbitrate a claim by Plaintiffs against these Defendants.

The question of whether the Arbitration Provision is enforceable against the individual Plaintiffs requires more detailed analysis. Defendants concede that the individual Plaintiffs, Tracey and Charles Gundersen, are not parties to the contract containing the Arbitration Provision (*i.e.*, the Franchise Agreement). However, Defendants assert that the individual Plaintiffs are bound by the Arbitration Provision by virtue of their signatures on the Guaranty and Assumption of Obligation. Defendants cite no authority for this conclusion. Plaintiffs' response is a single sentence in their Memorandum, asserting that the individual Plaintiffs cannot be compelled to arbitrate because they were not parties to the Franchise Agreement.

"As a general rule, a guarantor who is not a signatory to a contract containing an arbitration clause [such as the individual Plaintiffs] is not bound by the arbitration clause." Grundstad v. Ritt, 106 F.3d 201, 204 (7th Cir. 1997)(citations omitted). However, "a nonsignatory guarantor of an agreement containing an arbitration provision may be bound by the arbitration provision when the particular guaranty *explicitly* incorporates the underlying agreement by reference." Id. at 204 n. 4 (citations omitted)(emphasis supplied). The question of whether the individual Plaintiffs had an agreement to arbitrate their claims against Defendant ProHome turns on the existence and meaning of language in the

Guaranty and Assumption of Obligation (the "Guaranty") incorporating by reference the Franchise Agreement. See AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 242 F.3d 777, 780-81 (8th Cir. 2001). If this language in the Guaranty proves to be ambiguous, the Court may consider factors such as whether the Guaranty and the Franchise Agreement were signed at the same time, and whether there is other language in the Guaranty specifically excepting the individual Plaintiffs from the provisions of the Franchise Agreement. See ITT Hartford, 133 F.3d at 670.

The relevant language in the Guaranty reads as follows:

> the undersigned hereby personally and unconditionally . . agrees to be personally bound by, and personally liable for the breach of, each and every provision in the [Franchise] Agreement, both monetary obligations and obligations to take or refrain from taking specific actions or to engage or refrain from engaging in specific activities, including without limitation the provisions of Section 7.04 of Part VII [the Non-Competition Covenant].

The Guaranty does not make specific reference to the Arbitration Provision in the Franchise Agreement. It contains a broad statement that the individual Plaintiffs agree to be bound by every provision in the Franchise Agreement, but specifically identifies only the non-competition agreement.

In AgGrow Oils, the Eighth Circuit expressed concern about construing the incorporation clause in a surety agreement as an express agreement to arbitrate. AgGrow Oils, 242 F.3d at 782. The Court emphasized that arbitration must be a matter of consent, not coercion. Id. (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995)). We are mindful of this concern in deciding if the individual Plaintiffs should be bound by the Arbitration Provision in the Franchise Agreement.

The surety agreement at issue in AgGrow Oils contained a statement that the surety bound itself for the performance of obligations under a construction contract, "which is incorporated herein by reference." Id. at 779. The Eighth Circuit concluded that this phrase was merely meant "to clarify the extent of the surety's secondary obligation," not to reflect a mutual intent to compel arbitration of disputes involving the surety. Id. at 782. The court found that the incorporation clause did not evidence a clear intent by the parties to the surety agreement to arbitrate their disputes. Id. at 781. In concluding that the parties were not bound by an agreement to arbitrate, the court stated serious concerns regarding the significance of construing an incorporation clause as an express agreement to arbitrate.

> The impact of such an agreement can be far-reaching. For example, it would permit the surety to compel arbitration of a claim on the bond when the principal obligor is bankrupt or out of business, even though no party to the underlying contract wished to arbitrate performance issues. It would also permit the obligee to compel an unwilling surety to arbitrate its unique defenses, such as whether the obligee had impaired the surety's position or released the principal obligor.

Id. at 782.

This case presents a situation similar to that which the Eighth Circuit sought to avoid. The broad reference to the Franchise Agreement in the Guaranty was intended to make the individual Plaintiffs liable for ProHome-TC's commercial obligations under the Franchise Agreement. We conclude that the individual Plaintiffs did not intend to be bound by the agreement to arbitrate entered into between ProHome and ProHome-TC.

In summary, the only claims covered by the Arbitration Provision in the Franchise Agreement are those by Plaintiff ProHome-TC against Defendant ProHome.

The claims by the individual Plaintiffs and the claims against the individual Defendants are not covered by the Arbitration Provision. We are advised that Defendants will assert Counterclaims, but they have not yet answered the Complaint, nor filed a Counterclaim, so it may not be determined whether those potential claims are subject to arbitration. We next consider the appropriate course of action with respect to each of these claims.

## III. DISPOSITION OF THE CLAIMS

### A. ProHome-TC vs. ProHome Inc. - The Arbitrable Claims

Defendants seek an Order from the Court, pursuant to 9 U.S.C. §§ 3 and 4, either dismissing or staying these claims and compelling ProHome-TC to bring them in arbitration. Defendants do not suggest that either § 3 or § 4 expressly provides for the dismissal of arbitrable claims. The only legal authority cited by Defendants to support dismissal of these claims is a case from the Fifth Circuit Court of Appeals, Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161 (5th Cir. 1992). In Alford, the Fifth Circuit held that:

> [9 U.S.C. § 3] was not intended to limit dismissal of a case in the proper circumstances. The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.

Alford, 975 F.2d at 1164 (citations omitted)(emphasis supplied).

As discussed in detail above, some, in fact most, of the claims raised in this Court by Plaintiffs are not subject to arbitration. There exists no authority for the Court to dismiss the arbitrable claims when they are only part of the case. Having concluded that dismissal is not appropriate, we next look to whether the Court should stay the arbitrable claims and/or issue an Order compelling Plaintiff ProHome-TC to bring them in arbitration.

The authority to stay a court action pending arbitration derives from 9 U.S.C. § 3, which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

If claims are arbitrable according to the terms of the agreement between the parties, the proceedings must be stayed pending arbitration. Keymer v. Management Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir. 1999)(citation omitted).

Plaintiffs have not alleged that a stay is inappropriate because Defendants are "in default" in proceeding with arbitration. A stay of the claims by Plaintiff ProHome-TC against Defendant ProHome, Inc. pursuant to 9 U.S.C. § 3 is proper, because those claims are covered by the agreement to arbitrate.

The authority to compel arbitration comes from 9 U.S.C. § 4, which provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a federal district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." The considerations which move the Court to order a stay pursuant to § 3 do not also require an Order compelling arbitration pursuant to § 4. See Fremont Cake & Meal Co. v. Wilson & Co., 86 F. Supp. 968, 974 (D. Neb. 1949), aff'd, 183 F.2d 57 (8th Cir. 1950). Under § 3, all Defendants must show is that an the claims asserted fall within an enforceable

arbitration agreement. Under § 4, Defendants must also establish that they are aggrieved by Plaintiffs failure, neglect, or refusal to arbitrate. ProHome, Inc. asserts that it has been aggrieved by the failure, neglect, or refusal of ProHome-TC to arbitrate its claims. On the record before the Court, we disagree with this assertion.

None of the parties to this case has taken any steps to begin arbitration proceedings. After Plaintiffs filed suit, Defendants moved to compel arbitration rather than making a formal demand for arbitration, or seeking to arbitrate their own Counterclaims. Plaintiffs have not had the opportunity to refuse to arbitrate this dispute; no arbitration proceeding exists in which Plaintiffs have refused or failed to participate. Until one party has taken the required steps to initiate arbitration, there is no requirement that the other party take any action. Fremont Cake, 86 F. Supp. at 975. Something more than a contractual right to arbitration is required to trigger the remedy provided for in § 4. Id. at 974. The prerequisites for an Order compelling arbitration have not been met in this case.

This conclusion is also supported by the fact that granting a stay pursuant to § 3 is sufficient to lead to the result desired by Defendant ProHome. As a practical matter, staying the claims by ProHome-TC against ProHome will prevent ProHome-TC from moving forward on those claims unless it chooses to begin arbitration. Cf. Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 26-27 (1983)(a § 3 stay is adequate to protect the right to arbitration where the party opposing arbitration is the one seeking payment or performance). The stay of proceedings will allow time for either party to exercise its right to arbitrate under the Franchise Agreement.

**B. Claims By and/or Against Individuals - The Non-arbitrable Claims**

The remaining claims are those asserted by the individual Plaintiffs (Charles and Tracey Gundersen) and those asserted against the individual Defendants (Jack and Susan Salmans and Larry Johnson). Defendants ask that we use our discretion to stay those claims for purposes of judicial economy.

The Court has the inherent power to grant a stay of non-arbitrable claims in order to "control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it." Contracting Northwest, Inc. v. City of Fredericksburg, Iowa, 713 F.2d 382, 387 (8th Cir. 1983)(citations omitted). In particular, staying the non-arbitrable claims "makes eminent sense" when they involve common questions of fact with the claims that are subject to arbitration. Id.

In this case, we do not have the necessary information to determine if common questions of fact are involved. Defendants have not filed an Answer to any of the claims in the Complaint. There is nothing in the record to indicate what defenses and/or counterclaims may be raised in response to the claims against the individual Defendants. In addition, the fact that no arbitration proceeding is pending weighs against stopping the progress of the non-arbitrable claims. See AgGrow Oils, 242 F.3d at 783. A discretionary stay is not appropriate at this time.

**C. The As-yet Unasserted Counterclaims**

As stated above, Defendants have indicated that they intend to assert Counterclaims against Plaintiffs. The contents of these Counterclaims is uncertain, because rather than answer the Complaint Defendants captioned the instant Motion a

Motion to Dismiss, despite the lack of authority for dismissal at this stage. Without knowing the contents of the Counterclaims, the Court has no way of determining whether or not they may fall within the Arbitration Provision of the Franchise Agreement.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that Defendants' Motion to Dismiss and/or to Stay and to Compel Arbitration [Docket No. 5] be granted in part and denied in part as follows:

1. Defendants' Motion to Dismiss should be denied;

2. Defendants' Motion for a Stay should be granted with respect to the claims brought by Plaintiff ProHome Twin Cities against Defendant ProHome, Inc., and in all other respects denied without prejudice.

Dated: January 18, 2002

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **February 4, 2002** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **February 4, 2002**.